**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**AT NASHVILLE**

| | | |
|---|---|---|
| VICTOR G. GILL | ) | |
| | ) | |
| v. | ) | Case No. 3:23-cv-01370 |
| | ) | |
| WAL-MART STORES EAST, LP | ) | |

**TO:   Honorable Aleta A. Trauger, United States District Judge**

# R E P O R T   A N D   R E C O M M E N D A T I O N

By Memorandum and Order entered February 5, 2024 (Docket Entry No. 8), this *pro se* employment discrimination case was referred to the Magistrate Judge for pretrial proceedings under 28 U.S.C. § 636(b)(1), Rule 72 of the Federal Rules of Civil Procedure, and the Local Rules of Court.

Currently pending before the Court is the motion for summary judgment filed by Defendant Wal-Mart Stores East, LP. (Docket Entry No. 16.) Plaintiff opposes the motion. (Docket Entry No. 21.) For the reasons set out below, the undersigned respectfully recommends that the motion for summary judgment be **GRANTED**.

## I.   BACKGROUND

Victor G. Gill ("Plaintiff") is a resident of Shelbyville, Tennessee, and a former employee of Wal-Mart Stores East, LP ("Defendant"). He began employment with Defendant in 2001 when he was hired as an Unloader/Processor at Defendant's Distribution Center #6062 in Shelbyville and remained in that position until his employment with Defendant ceased in 2022.

In the spring of 2021, Plaintiff suffered a workplace injury that eventually required a surgery to his neck. During 2021 and 2022, he also underwent treatments and surgeries for other medical issues, including hip and shoulder replacements. Because of his medical issues and the resulting significant medical restrictions on his ability to perform physical tasks, Plaintiff took extended leaves of absence from work, and his last day of actually working was in late May 2021. After Plaintiff ran out of leave time and the medical restrictions rendered him unable to continue working in the Unloader/Processor job, he was terminated from his employment on October 11, 2022. He was 62 years old at the time of his termination.

Believing that he was treated wrongfully by Defendant in the final year and a half of his employment, Plaintiff filed a charge of discrimination with the Tennessee Human Rights Commission and the Equal Employment Opportunity Commission ("EEOC") on November 1, 2022. In his charge, Plaintiff alleged discrimination based on age, disability, and race and set out the following statement as support:

> I began working for the above-named employer on February 26, 2001, as an Unloader. The employer has more than 20 employees. On April 15, 2021, I was injured on the job, so I reported the accident/injury to Mark Philpot, Manager. The employer failed to provide me with due process and my request for workmens comp for my hip and shoulder were disapproved. In April 2021, I was issued a write-up because of the accident, which was not my fault because the Double Jack malfunctioned. On May 24, 2021, I took leave, so I could undergo a medical procedure for my disability. In January 2022, I requested to be placed in a different position that would accommodate the restrictions for my disabilities. In January 2022, my request for a reasonable accommodation was denied. October 12, 2022, I was discharged because of my disabilities. I believe that I have been discriminated against based my race (AA), age (62), and disability, in violation of the Americans with Disabilities Amendments Act of 2008, in violation of the Age Discrimination in Employment Act of 1967, as amended, and in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Docket Entry No. 1-1 at 2.)

After receiving a right-to-sue letter from the EEOC, Plaintiff filed this *pro se* and *in forma pauperis* lawsuit on December 27, 2023. (Docket Entry No. 1.) Alleging discrimination based on race/color, age, and disability, Plaintiff brings claims against Defendant under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA"), and the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA"). (*Id.* at 3-4.) Plaintiff does not seek any specific relief, and the only factual allegations set out in the complaint are as follows:

> GOT HURT ON THE JOB DID NOT RECEIVE ANY DUE PROCESS,[IE] I REQUESTED MEDICAL FROM THE WORK PLACE AND GOT NO REPLY,WALMART FAILED TO FOLLOW THEIR ON POLICYS FOR WORK RELATD INJURIES,I HAD TO FILE FOR WORKERS COMP MY SELF AND WAS DENIED, WALMART FIRED ME FOR GETTING HURT ON THE JOB, I CONTACTED EEOC THEY INVESTAGATED AND ISSUED ME A RIGHT TO SUE LETTER.   (emphasis and spelling in original)

(*Id.* at 5.)   Plaintiff attaches to his complaint his right-to-sue letter, his charge of discrimination, a separation from employment notice, and a notice of denial for his workers' compensation claim. (Docket Entry No. 1-1.)

Defendant filed an answer. (Docket Entry No. 6.) After the parties were unsuccessful in an early attempt to settle the case (Docket Entry Nos. 10-12), the Court entered a scheduling order that provided for a period of pretrial activity. A jury trial has been demanded but a trial date has not been set pending the completion of pretrial proceedings and the resolution of the any dispositive motions. Other than the Defendant's motion for summary judgment, there are no other pending motions.

3

## II. MOTION FOR SUMMARY JUDGMENT AND RESPONSE

Defendant moves for summary judgment on all claims under Rule 56 of the Federal Rules of Civil Procedure. In support of its motion, Defendant relies upon: (1) a statement of undisputed material facts ("SUMF") (Docket Entry No. 18); (2) the declaration and exhibits attached thereto of Timothy Monroe, a Human Resources Manager for Defendant (Docket Entry No. 19-1); and, (3) excerpts from Plaintiff's deposition transcript (Docket Entry No. 19-2). Defendant contends that Plaintiff's claims are not supported by sufficient evidence to require that this case proceed to a jury trial. Defendant argues that Plaintiff:

> was lawfully terminated only after he exhausted all available leave of absence options and his indefinite period of incapacity rendered Defendant incapable of providing alternative reasonable accommodations. Neither Plaintiff's disability, race, nor age had any bearing on Defendant's decision to separate his employment. There is no genuine dispute as to any material fact concerning Plaintiff's claims, and therefore, Defendant is entitled to judgment as a matter of law.

(Docket Entry No. 17 at 1.)

Plaintiff responds in opposition to the motion with a brief (Docket Entry No. 21) and with affidavits and documents that were part of his workers' compensation proceedings (Docket Entry No. 21-1.) These include the affidavits of Mark Philpott, a Shipping Area Manager at the distribution center (*id*. at 2), Edward Ransom, a co-worker of Plaintiff (*id*. at 4), and Monroe (*id*. at 11-12). Plaintiff has not filed a response to Defendant's SUMF. Plaintiff argues that genuine issues of material fact exist and that a jury "must be permitted to thoroughly examine the circumstances of Plaintiff's termination, assessing whether [Defendant] fulfilled its legal and ethical obligations to a 20-year employee. (Docket Entry No. 21 at 11.) Plaintiff describes what he believes are factual issues and questions about the manner of Defendant's response to the workplace accident and to the workers' compensation claim and also points to what he believes is

4

a lack of evidence that Defendant engaged in an interactive process in an attempt to find a reasonable accommodation for him that would have kept him employed.

In reply, Defendant asserts that Plaintiff has not responded to its SUMF and that the factual questions that identifies in his response, as well as his supporting evidence, are directed at issues concerning the workers' compensation claims that are immaterial to the Court's determination of his race, age, and disability discrimination claims. (Docket Entry No. 22.)    Defendant further asserts that Plaintiff's response fails to adequately address its arguments for summary judgment and fails to show that there is evidence in the record that supports the claims of unlawful discrimination.

### III.    STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

The moving party has the burden of showing the absence of genuine factual disputes. *Anderson*, at 249-50; *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Pittman,* 901 F.3d

5

at 628. The nonmoving party "is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her claims; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431 (6th Cir.), *cert. denied*, 531 U.S. 875 (2000). In doing so, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986).

## IV.   ANALYSIS

In light of Plaintiff's *pro se* status, the Court has given him a measure of leeway in the consideration of his response to the motion for summary judgment. Even with this latitude, however, Plaintiff's response and supporting evidence are not sufficient to rebut Defendant's request for summary judgment. There is simply a dearth of evidence in the record that supports Plaintiff's allegations of unlawful discrimination. The lack of evidence is so significant that no reasonable jury could find in favor of Plaintiff on his claims. Any issues of fact that exist do not rise to the level of genuine issues of material fact that must be resolved at trial. Accordingly, Defendant is entitled to summary judgment on all claims.

6

## A. Plaintiff's Response

Like many *pro se* parties who respond to a motion for summary judgment, Plaintiff attempts to support his case as well as he possibly can as a non-attorney. Nonetheless, Plaintiff's response suffers from shortcomings that cannot be disregarded merely because he is proceeding *pro se*.

*First*, the majority of Plaintiff's response is directed at issues pertaining to the workplace accident, Defendant's response to the accident, and the workers' compensation claim. Indeed, each item of evidence attached to Plaintiff's response is something that was created as part of the workers' compensation proceeding. (Docket Entry No. 21-1.) However, the only claims in this case are federal claims of racial, age, and disability discrimination. Thus, the bulk of Plaintiff's response and his supporting evidence have minimal or no relevance to the actual claims in this case.

*Second*, Plaintiff contends that his receipt of the right-to-sue letter from the EEOC supports the merits of his case. (Docket Entry No. 21 at 5) ("The Equal Employment Opportunity Commission's issuance of a right-to-sue letter provides crucial external validation of the potential discriminatory nature of Plaintiff's termination."). This contention is mistaken. While receipt of a right-to-sue letter is a prerequisite to filing a lawsuit, the right-to-sue letter is not evidence that goes to the merits of a discrimination claim. *Nolen v. FedEx TechConnect, Inc.*, 971 F.Supp.2d 694, 704 (W.D. Tenn. 2013).

Finally, Plaintiff has not filed a response to Defendant's SUMF as required by Local Rule 56.01(c) and has not otherwise pointed to evidence in the record that disputes the factual assertions set out in Defendant's SUMF. Local Rule 56.01(g) provides that when a party fails to respond to

7

a moving party's statement of material facts, "the asserted facts shall be deemed undisputed for the purposes of summary judgment." The facts set forth in Defendant's SUMF, which are supported by evidence from Defendant, are therefore properly considered by the Court as undisputed for the purposes of reviewing the motion for summary judgment.

## B. Relevant Undisputed Facts

The Unloader/Processor position is a physical position that requires the ability to move, lift, carry and place items weighing up to 60 pounds without assistance and to reach overhead and below the knees, including bending, twisting, pulling, and stooping. (Docket Entry No. 18 at ¶¶ 35-36.) During the last year and a half of Plaintiff's employment, he (1) was injured in a work-related accident in the spring of 2021 and underwent treatment and a surgery to his neck as a result and (2) he experienced other health issues that required treatment and surgeries, including an appendectomy, a hip replacement, and a shoulder replacement. (*Id.* at ¶¶ 13, 16, 19, 23, 29.) As a result of these medical issues, Plaintiff was approved for several, extended leaves of absence from work, and the last day that he actually worked at his job was on or about May 24, 2021. (*Id.* at ¶¶ 16, 52.) During this time, Plaintiff received short-term disability benefits. (*Id.* at ¶¶ 14, 17, 20.)

When Plaintiff exhausted the 52 weeks of leave permitted under Defendant's policy, he was advised that any additional leave would need to be requested and approved through Defendant's Accommodation Service Center ("ASC"). (*Id.* at ¶ 31.) Plaintiff contacted the ASC in April of 2022, and requested a reduced work schedule of a four-day work week with only five-hour work shifts, a reduction from normal five days a week/eight-hour shift.[1]  (*Id.* at ¶ 32.) At the

---

[1] Although Plaintiff asserted in his charge of discrimination that he requested in January 2022 to be placed in a different position that would accommodate the restrictions for his disabilities but that this request was denied, *see* Docket Entry No. 1-1, he has failed to set forth any actual

time, Plaintiff's then existing medical restrictions restricted him from lifting more than nine pounds, from pulling or reaching overhead, and from bending, stooping, walking or standing for periods of time, and from climbing steps. (*Id.* at ¶34.) Given these restrictions ASC found that Plaintiff could not perform the essential functions of the Unloader/Processor position, which requires the ability to move, lift, carry and place items weighing up to 60 pounds without assistance and to reach overhead and below the knees, including bending, twisting, pulling, and stooping, and ASC denied his request of an accommodation consisting of lesser work hours/days in that position. (*Id.* at ¶ 37.) However, ASC extended Plaintiff's leave of absence for another three months to permit Defendant to work with Plaintiff to find a position that was suitable for his restrictions. (*Id.*)

Although the distribution center where Plaintiff worked did not have any suitable positions that were available, Monroe located positions that might be suitable at other store locations, but Plaintiff was not interested in those positions or in talking with other store managers about vacant positions, did not contact Monroe about other positions, and told Monroe in June 2022 that his restrictions prohibited his ability to do virtually anything for formal employment. (*Id.* at ¶¶ 38-42.) Plaintiff made a request to ASC in late July 2022 to extend the three months of leave but this request was subsequently denied on October 5, 2022, because the medical documentation that Plaintiff submitted stated that his restrictions were permanent, that he had an indefinite period of incapacity with no expected return-to-work date, and that he was not released to work even if an open position was located that met his restrictions. (*Id.* at ¶¶ 42-44, 47-51.) Plaintiff was thereafter terminated from employment given the exhaustion of his available leave time and the lack of an alternative reasonable accommodation for him. (*Id.* at ¶ 54.) Plaintiff has not sought

---

evidence supporting this assertion.

employment and returned to the workforce since losing his job with Defendant. (*Id.* at ¶ 54.) At the time of his termination, Plaintiff had unsuccessfully pursued a claim of for workers' compensation benefits with the Tennessee Bureau of Workers' Compensation because of the injuries arising from his workplace accident, *see* Docket Entry No. 1-1, but it appears that the workers' compensation claim was ultimately resolved through a settlement with Plaintiff. (Docket Entry No. 22 at 2-3.)

## C. Race, Color, and Age Discrimination Claims

Defendant is entitled to summary judgment on these claims because the evidence in the record would not permit a reasonable jury to find that Plaintiff was the victim of discrimination due to race, color, or age. Plaintiff has simply not shown that he has any actual evidence to support these claims.

As the party bringing claims of racial, color, and age discrimination, Plaintiff has the ultimate burden to prove his claims with evidence. *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009). Plaintiff must point to supporting evidence that is already in the record or present his own supporting evidence. This evidence may be either direct evidence or indirect, circumstantial evidence that raises an inference of discrimination, *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003) (race); *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (age), but there must be actual evidence. Mere speculation of discrimination based upon personal beliefs or conjecture is not sufficient to support a claim of discrimination. *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008); *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 (6th Cir. 1986).

10

Defendant correctly points out that Plaintiff's claims suffer from a complete lack of supporting evidence. Nothing in Plaintiff's complaint references events or facts that reflect either race, color, or age discrimination. Nor does his charge of discrimination actually point to such events or facts. Plaintiff has further not provided any direct evidence that he was discriminated against because of his race, color, or age.[2]

In the absence of direct evidence of discrimination, Plaintiff's discrimination claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, at 803-05 (1973). Under this framework, Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. Once he does, the burden shifts to Defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action. If Defendant meets this burden, "the burden shifts back to the plaintiff to show that the defendant's proffered reason was not its true reason, but merely a pretext for discrimination." *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016).

For Plaintiff to show a *prima facie* case of discrimination based upon circumstantial evidence, he must, among other things, point to evidence that he was replaced by someone outside the protected class or point to evidence of another of Defendant's employees who is outside the protected class and who was similarly situated to Plaintiff but was treated differently under the same or similar circumstances. *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606-07 (6th

---

[2] Direct evidence of discrimination "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson*, 319 F.3d at 865. The hallmark of direct evidence is that it shows an explicit expression of an unlawful motivation to discriminate, *see Amini v. Oberlin College*, 440 F.3d 350, 359 (6th Cir. 2006), which if believed, requires no inferences to conclude that unlawful conduct was a motivating factor in the challenged action. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003).

Cir. 2019); *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003). Plaintiff's response to the motion for summary judgment contains only a cursory argument about these discrimination claims and fails to set forth any actual argument that directly addresses his proof for these claims. (Docket Entry No. 21 at 10.) Further, the evidence Plaintiff attaches to his response fails to support the claims because the evidence pertains to the workplace accident and the workers' compensation claim and is irrelevant to his allegations of race, color, and age discrimination. His deposition testimony about other, unidentified employees that he believes were treated more favorably than him, *see* Docket Entry No.19-2 at 25-28, is simply too vague and too general to support his claims and to rebut Defendant's request for summary judgment. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 583-84 (6th Cir. 1992) (plaintiff failed to provide sufficient, specific evidence of comparable employees to satisfy his *prima facie* burden for claim of discrimination); *Forrest v. CSX Transportation, Inc.*, 2025 WL 337995, at *9 (M.D.Tenn. Jan. 29, 2025) (general reference by the plaintiff to co-workers who were allegedly treated more favorably "does not satisfy the plaintiff's burden to point to a particular better-treated person outside his protected class similar to him in all material respects.").

In the end, Plaintiff has not gathered and produced the type of evidence that is necessary to support claims that he was the victim of race, color, or age discrimination. Plaintiff's subjective belief that such discrimination occurred is simply not sufficient to rebut the motion for summary judgment. *See Johnson v. Interstate Brands Corp.*, 351 F.App'x. 36, 42, 2009 WL 3583397 at *5 (6th Cir. Nov.3, 2009) ("[a] plaintiff's conclusory allegations and subjective beliefs are not a sufficient basis to deny summary judgment."); *Arendale*, 519 F.3d at 605 ("Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment.");

*Jordan v. Mathews Nissan, Inc.*, 539 F.Supp.3d 848, 874-75 (M.D.Tenn. 2021) (vague references to white employees generally being treated better is not sufficient to support claim of unequal treatment).

## C. Disability Discrimination

The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Adverse actions taken by an employer against an employee because of the employee's disability are unlawful. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 317-21 (6th Cir. 2012) (*en banc*). Discrimination under the ADA also includes a refusal by an employer to make "reasonable accommodations" for the employee's disability. *See Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 811 (6th Cir. 2020); *Kleiber v. Honda of America Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007).

Plaintiff's disability discrimination claims are that (1) Defendant failed to offer him a reasonable accommodation for his disability and (2) Defendant wrongfully terminated him because of his disability. (Docket Entry No. 1 at 4.) While the legal claims are clear, Plaintiff's complaint provides little factual background for the claims. Further, in responding to the motion for summary judgment, he likewise fails to provide a clear picture of the events underlying his claims, let alone provide evidence in support of the claims. After review of the parties' filings and the evidence presented, the Court finds that summary judgment should be granted to Defendant. While the Court sympathizes with Plaintiff's situation of losing his job after a lengthy career with Defendant, the

13

evidence in the record simply would not permit a reasonable jury to find that his rights under the ADA were violated.

Defendant's undisputed evidence shows that Plaintiff suffered from a series of medical issues beginning in the spring of 2021 and continuing into 2022, which included serious surgeries, and that these issues rendered him unable to perform the Unloader/Processor position. During this time, he received short-term disability benefits and was granted numerous leaves of absence pursuant to Defendant's leave of absence policy. When Plaintiff exhausted the 52 weeks of leave permitted under Defendant's policy, he was advised that any additional leave would need to be requested and approved through Defendant's ASC. Defendant's undisputed evidence shows that Plaintiff contacted the ASC in April of 2022, and requested a reduced work schedule of a four-day work week with only five-hour work shifts, a reduction from normal five days a week/eight hour shift. At the time, Plaintiff's then existing medical restrictions restricted him from lifting more than nine pounds, from pulling or reaching overhead, and from bending, stooping, walking or standing for periods of time, and from climbing steps. Given these restrictions ASC found that Plaintiff could not perform the essential functions of the Unloader/Processor position, which requires the ability to move, lift, carry and place items weighing up to 60 pounds without assistance and to reach overhead and below the knees, including bending, twisting, pulling, and stooping, and ASC denied his request of an accommodation consisting of lesser work hours/days in that position. However, ASC extended Plaintiff's leave of absence for another three months to permit Defendant to work with Plaintiff to find a position that was suitable for his restrictions.

Defendant's undisputed evidence shows that, although the distribution center where Plaintiff worked did not have any suitable positions that were available, Monroe located positions

14

that might be suitable at other store locations, but Plaintiff was not interested in those positions or in talking with other store managers about vacant positions, did not contact Monroe about other positions, and told Monroe in June 2022 that his restrictions prohibited his ability to do virtually anything for formal employment. Defendant's undisputed evidence shows that Plaintiff made a request to ASC in late July 2022 to extend the three month leave period but that this request was subsequently denied on October 5, 2022, because the medical documentation that Plaintiff submitted stated that his restrictions were permanent, that he had an indefinite period of incapacity with no expected return-to-work date, and that he was not released to work even if an open position was located that met his restrictions. Plaintiff was thereafter terminated from employment given the exhaustion of his available leave and the lack of an alternative reasonable accommodation for him. Defendant's undisputed evidence finally shows that Plaintiff has not sought employment and returned to the workforce since losing his job with Defendant.

Given these undisputed facts and the lack of any evidence from Plaintiff on the issue, the Court finds that there is no evidentiary support for Plaintiff's claim that he was denied a reasonable accommodation by Defendant such that he could succeed on this ADA claim at trial.

The ADA defines a "reasonable accommodation" to include:

(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

*Id*. § 12111(9). To advance a failure to accommodate claim under the ADA, an employee must show that he requested a reasonable accommodation, and that the employer failed to provide the

15

necessary accommodation. *Myers v. Cuyahoga Cnty*, 182 F.App'x. 510, 515 (6th Cir. 2006). The ADA plaintiff bears the burden of presenting evidence that he requested an accommodation that is reasonable. *Tchankpa*, 951 F.3d at 812 ("Plaintiffs must also propose a reasonable accommodation to succeed."); *Kleiber*, 485 F.3d at 870 ("Generally, an ADA plaintiff bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable."); *Walsh v. United Parcel Serv.*, 201 F.3d 718, 725 (6th Cir. 2000) ("The burden of establishing that the proposed accommodation is reasonable remains with the plaintiff . . ."); *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183 (6th Cir. 1996) ("the disabled individual bears the initial burden of proposing an accommodation and showing that *that* accommodation is objectively reasonable.").

The only actual evidence before the Court of Plaintiff's requests for an accommodation are his request in April 2022 for a reduced work schedule and his request in the fall of 2022 for a continued leave of absence. However, neither request sought a reasonable accommodation based on the evidence that is before the Court.

It is undisputed that, at the time that Plaintiff sought an accommodation through reduction of his work hours, his work restrictions were so limiting that they prevented him from performing the essential functions of the Unloader/Processor position, which required significant lifting and the ability to perform physical tasks such as reaching overhead and below, bending, twisting, pulling, and stooping. There is no evidence that Plaintiff, even with a reduced work schedule, would have been able to perform these essential functions of the Unloader/Processor position. Indeed, it escapes the Court how merely reducing his work schedule would have been a change that accommodated his physical restrictions considering the essential functions of the Unloader/Processor position. A requested accommodation that would keep the employee in the

16

job at issue but would not result in the employee being able to effectively perform the essential functions of the job is not a request for a reasonable accommodation. *See E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 763 (6th Cir. 2015); *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010).

As to Plaintiff's request in the fall of 2022 to remain on a continued leave of absence, it is undisputed that by this time, Plaintiff had been on a leave of absence for approximately 14 months and had already been granted leave in excess of Defendant's leave policy that allowed for 52 weeks of leave. It is further undisputed that the most recent medical documentation submitted in support of his request for additional leave showed that his restrictions were deemed by his physician to be permanent, that he had an indefinite period of incapacity with no expected return-to-work date, and that he was not released to work even if an open position was located that met his restrictions. While it was a form of a reasonable accommodation for Defendant to have initially granted Plaintiff a leave of absence from work and to have extended his leave past the amount of leave provided by its own leave policy, *see Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 783 (6th Cir. 1998), a leave of absence can reach a point when it is no longer reasonable because the requested leave is for an indefinite period and/or the employee has no reasonable prospect of returning to work. In such situations, extending a leave of absence is not an accommodation required under the ADA. *Walsh*, 201 F.3d at 727 ("[W]hen the requested accommodation has no reasonable prospect of allowing the individual to work in the identifiable future, it is objectively not an accommodation that the employer should be required to provide."). *See, e.g., Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 394 (6th Cir. 2017) ("An employer is not required to keep an employee's job open indefinitely."); *Cooley v. E. Tenn. Human Res. Agency, Inc.*, 720

17

F.App'x 734, 741 (6th Cir. 2017 ("for an additional leave of absence to be a reasonable accommodation under the ADA, the employee must, at a minimum, provide the employer with an estimated, credible date when she can resume her essential duties"); *Maat v. Cnty. of Ottawa*, 657 F.App'x 404, 412-13 (6th Cir. 2016) (concluding that where an employee had already received substantial leave, additional leave was not a reasonable accommodation because her physician's vague estimate of a return date was uncertain and indicated that she might need further treatment); *Aston v. Tapco Int'l Corp.*, 631 F.App'x 292, 298 (6th Cir. 2015) (concluding that additional leave was not a reasonable accommodation where an employee had already received a 26-week leave and had provided a physician's estimate of a return date, but had also submitted evidence that she still needed another medical procedure which would require recovery time beyond that date). A reasonable accommodation simply "does not require the employer to wait indefinitely" for an employee's medical condition to improve. *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998).

Finally, although this allegation is not included anywhere in his actual complaint, Plaintiff's asserts in his charge of discrimination that his request in January 2022 to be placed in a different position as an accommodation was denied. This could liberally be construed as an allegation that he requested an accommodation of being transferred to another position with Defendant at which he could work with his restrictions. However, Plaintiff provides no actual evidence in support of this allegation. Indeed, there is no evidence in the record that provides any specifics about this alleged request.

Furthermore, while a reassignment or transfer to another, vacant job may be required as a reasonable accommodation when an employee can no longer perform the functions of his job and

18

while an employer has a duty to attempt to locate suitable positions, an employee may not recover unless the employee proposes, or applies for, specific alternative positions for which the employee is qualified. *Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 256-58 (6th Cir. 2022); *Hobson v. Austin*, 2021 WL 973481, at *3 (M.D.Tenn. Mar. 16, 2021) (Campbell, J). ("the plaintiff bears the burden of establishing that a vacant position exists and that she was qualified for the position."). "Where the plaintiff claims that [he] should have been accommodated by reassignment to another position, identifying the necessary accommodation requires the plaintiff to identify the position to which [he] should have been reassigned." *Willard v. Potter*, 264 F.App'x 485, 487 (6th Cir. 2008). Plaintiff's failure to provide the necessary evidence that satisfies this showing entitles Defendant to summary judgment on the liberally construed claim. *Id.*; *Kleiber*, 485 F.3d at 870 ("Nonetheless, to overcome summary judgment, the plaintiff generally must identify the specific job he seeks and demonstrate that he is qualified for that position."); *Adams v. TRW Auto. US. LLC*, 2005 WL 1862302, at *16 (M.D.Tenn. July 22, 2005) (the plaintiff's failure to provide evidence that he asked his employer about reassignment to specific, vacant positions for which he was qualified entitled the employer to summary judgment on ADA claim that the employer failed to reasonably accommodate employee through a reassignment to another position).

Plaintiff argues in his response to the motion for summary judgment that there is no evidence that Defendant engaged in the "interactive process." (Docket Entry No. 21 at 10.) The Court disagrees. To be sure, "once an employee requests an accommodation, the employer has a duty to engage in an interactive process." *Blanchet v. Charter Communications, LLC*, 27 F.4th 1221, 1232 (6th Cir. 2022) (quoting *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 857 (6th Cir. 2018)). The purpose of the duty is to "identify the precise limitations resulting from the disability

19

and potential reasonable accommodations that could overcome those limitations." *Rorrer v. City of Stow*, 743 F.3d 1025, 1040 (6th Cir. 2014) (quoting *Kleiber*, 485 F.3d at 871). As set out herein, the undisputed evidence shows that Defendant did engage in the interactive process with Plaintiff. Defendant approved Plaintiff for repeated leaves of absence and extended Plaintiff's leave of absence for an additional three months past the amount of leave permitted by Defendant's policy in order to place him on a job search leave of absence. Defendant gave Plaintiff the opportunity to provide medical documentation regarding his medical conditions, physical restrictions, length of impairment, and expected date of return to work. The undisputed evidence finally shows that, during the time period of Plaintiff's final leave of absence, Timothy Monroe searched for and located possible suitable positions at other store locations and tried to connect Plaintiff with managers at those store locations but Plaintiff was not interested and did not cooperate with Monroe. These facts all show a good faith engagement by Defendant in the interactive process.

Plaintiff's wrongful termination claim fares no better considering the evidence that is before the Court. At the time he was terminated from his employment, Plaintiff had been on a leave of absence and had not worked at his job for nearly 17 months. At the time of his termination, the medical documentation from his treating physician that he provided to Defendant indicated that his physical restrictions were permanent, that he had an indefinite period of incapacity with no expected return-to-work date, that he was not released to work even if an open position was located that met his restrictions, and that his physician viewed him as fully disabled. (Docket Entry No. 18 at ¶¶ 42-44, 47-51.) An employee who has not been medically released to return to work and therefore cannot perform the essential function of regularly attending his or her job, is not a qualified individual for purposes of the ADA. *Gamble v. JP Morgan Chase & Co.,* 689 F.App'x

397, 403 (6th Cir. 2017) (employer entitled to summary judgement on ADA wrongful termination claim because the evidence showed that employee "was not released to work by his doctor and remained completely disabled at the time of his termination"); *Anderson v. Inland Paperboard & Packaging, Inc.*, 11 F.App'x. 432, 438 (6th Cir. 2001) (holding that an employee failed to establish the second prong of a *prima facie* case under the ADA because her doctor "had not yet given her permission to return to work when her employment ... was terminated"); *Gantt*, 143 F.3d at 1047 (holding that an employee had "not met the second requirement that she be qualified to perform the essential functions of the job" where she was not released by her doctor to return to work, failed to come to work for an entire year, and "gave no indication as to when she would be able to return to work"). There is simply no evidentiary basis that would support any reasonable conclusion that Plaintiff was terminated from his employment because of unlawful disability discrimination.

### R E C O M M E N D A T I O N

For the reasons set out above, it is respectfully **RECOMMENDED** that the motion for summary judgment filed by Defendant Wal-Mart Stores East, LP (Docket Entry No 16) be **GRANTED** and that this action be **DISMISSED WITH PREJUDICE** as to all claims.

**ANY OBJECTIONS** to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140

21

(1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections

must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and

Local Rule 72.02(b).

Respectfully submitted,

_____
BARBARA D. HOLMES
United States Magistrate Judge